N.R. SMITH,
concurring in part and dissenting in part:
This case should be over. The majority correctly rejects Alcantar’s contentions regarding (a) the denial of class certification on his meal break claim, and (b) the grant of summary judgment to Hobart on his PAGA claim.[1] Then, for reasons quite unclear to me, the majority fails to affirm the grant of summary judgment on the commute time claim. Even viewing the facts in the light most favorable to Alcantar, as we must when reviewing a grant of summary judgment, see Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir.2002), there is no genuine issue of material fact on this issue.
Under California law, Alcantar may only succeed on his commute time claim if he can show that he is subject to Hobart’s control during his commute. See CaLCode Regs. tit. 8, § 11040(2)(K). If an employer requires its employees to commute in employer provided vehicles and “prohibit[s] them from effectively using their travel time for their own purposes,” then the employer must compensate the employees for their time as “hours worked.” See Morillion v. Royal Packing Co., 22 Cal.4th 575, 94 Cal.Rptr.2d 3, 995 P.2d 139, 146 (2000). However, if the employees are “free to choose — rather than required — to” utilize employer provided transportation, then they are not under their employer’s control, regardless if they ultimately use the employer provided transportation. See id. 94 Cal.Rptr.2d 3, 995 P.2d at 148 n. 5; Overton v. Walt Disney Co., 136 Cal. App.4th 263, 38 Cal.Rptr.3d 693, 699 (2006).
Here, Alcantar and all Hobart employees can choose to either commute in their own personal vehicles or commute in Hobart provided service vehicles. Nothing prevents Hobart employees from utilizing either option. Thus, because Hobart employees are free to choose their method to commute, they are not under Hobart’s control during their commutes and Hobart is not obligated to pay them for their commute time. The facts, as alleged by Alcantar, confirm this result:
• No one disputes that Hobart has a written policy that allows its employees to either (1) park their service vehicles at Hobart’s facilities at the end of their shift and commute home in their personal vehicles or (2) commute in their service vehicles.
• No one disputes that, if Hobart employees choose to park their service vehicles at a Hobart facility overnight and commute in their own personal vehicles, they are not subject to any Hobart policies that limit how the employees can use their commute time; i.e., they are not under Hobart’s control.
*1059 • Alcantar alleges that, if Hobart employees commute in their service vehicles, they cannot use the commute time for their own benefit because of Hobart’s policies restricting the use of the service vehicles. Thus, the employees are under Hobart’s control dining their normal commute if they commute in their service vehicles.
• No one disputes that Hobart facilities do not have enough secured parking spaces (i.e., parking spaces in a locked area, either inside a building or in a fenced area) to allow all Hobart employees to leave their vehicles overnight in a secured parking area. However, there is enough unsecured parking for all vehicles, should every employee choose to park their vehicle overnight at the Hobart facility.
• No one disputes that Hobart has a general policy declaring Hobart employees responsible for their tools and equipment. The “Service Technicians Rules/Understanding” form (which all Hobart service technicians sign) states: “Should any of the tools be lost, misplaced or should they not be available when regularly inventoried, or returned by me at the request of the company, then I accept full responsibility for such tools, and agree to pay for such tools.” However, it is also undisputed that Hobart has a separate provision addressing an employee’s liability for the theft of tools and equipment from their service vehicles. Hobart’s Personnel Policies and Procedures Handbook (which is also provided to each Hobart employee) states:
“You are responsible for the replacement of any tool lost or stolen through your negligence.... Hobart tools are insured against theft but only when theft results from forced entry to a vehicle or workshop. Consequently, you must ensure that your vehicle is securely locked when it is left unattended.” [2]
Given these facts (viewed in the light most favorable to Alcantar), the commute time is not compensable as “hours worked.” See Morillion, 94 Cal.Rptr.2d 3, 995 P.2d at 148 n. 5; Overton, 38 Cal. Rptr.3rd at 699. Hobart employees have the choice to either (1) park their service vehicles overnight at Hobart’s facilities in a secured area (if spots are available) or in an unsecured area with locked doors, and commute in their own personal vehicle (outside of Hobart’s control), or (2) commute in their service vehicles (under Hobart’s control). Nothing prevents Hobart employees from leaving their service vehicles overnight at Hobart’s facilities.
Alcantar first argues (and the majority buys his argument) that the option to leave the service vehicles overnight at Hobart’s facilities may be illusory, because the vehicles would be left in unsecured parking lots and the Hobart employees would be liable for the cost of replacing any stolen tools or equipment, should the vehicles be burglarized. However, this argument contradicts the undisputed facts in the record and Hobart’s policy. Hobart’s undisputed policy regarding equipment stolen from service vehicles states that employees are only liable for tools and equipment stolen *1060 out of their vehicles if the theft occurred because of the employees’ negligence. Hobart’s policy further clarifies the duty of care that its employees must follow when leaving their vehicles; they must lock their doors. If tools or equipment are stolen out of a locked vehicle, Hobart’s insurance covers the loss, not the employee. Further, Hobart has expressly authorized its employees to leave their vehicles overnight at its facilities. Therefore, because Hobart has established the requisite duty for its employees, it cannot be .negligence to do exactly as Hobart has directed. Because Hobart employees would not be held liable for tools or equipment stolen from service vehicles left overnight at Hobart facilities (either in the secured area or locked in the unsecured area), any argument that the employees are somehow required to drive their service vehicles home for the security of the vehicle’s contents has no basis in the record. Alcantar has not provided any evidence that Hobart does not follow its theft policy or has informed its employees that they would be liable for the cost of tools stolen out of locked vehicles. Alcantar has not shown that Hobart has ever required an employee to pay for tools stolen out of his or her service vehicle when the tools were stolen after the employee had locked the doors to his or her vehicle.[3] Therefore, the option of leaving service vehicles overnight at Hobart facilities cannot be illusory. There is no genuine issue of material fact on this issue.
To contradict this conclusion, the majority manufactures the argument that Hobart’s policies are “inconsistent.” Alcantar has never even made that argument. Instead, in his opening brief, Alcantar recognized Hobart’s undisputed policy, as conveyed in both the Rules/Understandings form and Hobart’s Manual:
The Rules/Understandings explain that Technicians are responsible for tools assigned to them, stating:
... I assume full responsibility for the tools as well as any service manuals ... Should any of the tools be lost, misplaced or should they not be available when regularly inventoried, or returned by me at the request of the company, then I accept full responsibility for such tools, and agree to pay for such tools.
Hobart’s Manual also explains:
We feel that a Service Technician cannot properly service the equipment unless the proper tools are available at all times. Therefore, it is your responsibility to ensure that the full inventory of assigned tools be maintained ... You are responsible for the replacement of any tool lost or stolen through your negligence.
[Hobart’s representative] confirmed that this is an accurate statement of Hobart’s policy.
*1061 Alcantar clearly saw no inconsistency between these two provisions, but instead viewed them as one complete policy. By manufacturing its own argument, the majority again attempts to create a genuine issue of fact where there is none.
Because Alcantar has ■ presented both the Rules/Understandings form and Hobart’s Manual as an “accurate statement” of Hobart’s policy, we must give both provisions effect. This is not hard to do, because the provisions are not inconsistent.[4] Hobart’s employees are responsible for the cost of their tools if they are lost, misplaced, or otherwise unavailable when requested. However, if the tools were stolen, the employees will only be held liable for their cost if the theft occurred because of the employees negligence. The only portion of Hobart’s policy that discusses an employee’s liability for stolen tools remains the provision contained in Hobart’s Manual. This is an undisputed fact that the majority cannot ignore.
Alcantar argues (and the majority buys the argument) that the lack of secured parking somehow renders.illusory the option to leave service vehicles overnight at Hobart facilities. However, the availability of secured parking areas at Hobart facilities does not matter in this analysis. A Hobart employee’s liability for stolen tools does not depend on whether the vehicles wefe parked in a secured parking area. Instead, the employee’s liability occurs only when the theft was facilitated by the employee’s negligence. Parking a locked vehicle at a location specifically authorized by Hobart cannot be negligence, because Hobart has expressly authorized such conduct.
The majority responds by again trying to manufacture a disputed issue of fact. The majority emphasizes that some Hobart employees have provided declarations asserting that they thought that commuting in their service vehicles was their only practical option, because of the concern for the safety of their tools. According to the majority, this subjective belief renders the option of leaving the vehicles overnight at Hobart facilities illusory. However, the California Court of Appeal rejected similar arguments in Overton, 38 Cal.Rptr.3d at 699. In Overton, Disney employees at the Disneyland Resort in California, who commuted to work in their own vehicles, were required to park at a parking lot one mile from the Resort. Id. at 694. Disney provided a shuttle bus for the employees that •ran from the parking lot to the Resort. Id. Relying on Morillion v. Royal Packing. Co., the Disney employees sued for unpaid wages, claiming that the time they spent waiting for and riding the shuttle bus was compensable time, because they were required to use the shuttle for their commute. Overton, 38 Cal.Rptr.3d at 695. The California Court of Appeal rejected the Disney employees’ claim, holding that the employees were not required to ride the shuttle bus. Id. at 699.' Instead, the court noted that the Disney employees could use any number of alternative methods to commute, including riding the train or bus, being dropped off, or walking or riding their bikes. Id. The court then ■■ rejected the argument that commute time was compensable for “employees who, as a *1062 practical matter, are required to use an employer-provided shuttle because no alternative transportation is available or feasible.” Id. at 700. The court reasoned that the dispositive inquiry in Morillion is not whether the individual employees had a meaningful alternative, but whether the employees (as a whole) “were free to choose — rather than required — to ride their employer’s buses.” Id. (quoting Morillion, 94 Cal.Rptr.2d 3, 995 P.2d at 148 n. 5).
Just like the employees in Overton (who thought that utilizing the shuttle bus was the only practical method of commuting), Alcantar argues that commuting in his service vehicle home was the only practical method of commuting, because it ensured the safety of the tools and equipment for which he was responsible. However, viewing the undisputed facts, Alcantar and all other Hobart employees were free to' choose to leave their service vehicles at Hobart facilities and commute in their own personal vehicles, because there would be absolutely no negative consequences for doing so. Therefore, no reasonable jury could conclude that the option is illusory. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (reasoning that a genuine issue of material fibt exists if “the evidence is such that a reasonable jury could return a verdict for the nonmoving party”).
Under both Morillion and Overton, Hobart is not required by California law to compensate its employees for their normal commute time, because employees are free to choose to commute in their own personal vehicles outside of Hobart’s control. Hobart is entitled to judgment as a matter of law. Accordingly, this case should be over.

. The majority also correctly concludes that the district court erred in denying Alcantar class certification on his commute time claim. However, as I would affirm the district court's grant of summary judgment to Hobart on the commute time claim, I would not remand the case, because remand would be futile.

. Alcantar admits that this is Hobart’s policy. In fact, Alcantar quotes the written policy in his opening brief and specifically recognizes that Hobart's Regional Director for the Central West and Southern California Regions confirmed that the written policy was accurate. Additionally, Alcantar has not argued that Hobart fails to follow its written policy. Nor has he presented evidence that Hobart has ever held an employee liable for the cost of stolen tools even though the employee was not negligent. Therefore, based upon the record before us, it is undisputed that Hobart only holds its employee liable for the cost of tools stolen from his or her service vehicle if the employee's negligence facilitated the theft.

. The majority responds by suggesting that Alcantar shouldn’t be required to provide evidence that Hobart holds its employees liable for stolen tools even if they were hot negligent. Not true. Alcantar is responding to a motion for summary judgment. He has the burden to support his claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that summary judgment is appropriate against a ”[p]arty who fails to make a showing sufficient to establish the existence of an element essential to that party’s case”). Evidence of any occurrence, regardless of the location, when Hobart has held an employee liable for the cost of tools stolen out of a locked vehicle would be sufficient to show that Hobart does not follow its theft policy. Such evidence would show that Alcantar’s alleged reason for employees not leaving vehicles overnight at Hobart’s facilities is valid. But Alcantar has not provided any such evidence. Therefore, we must conclude that Hobart follows its stated policy. Any fear that Hobart employees would be held liable for tools stolen out of their vehicle if they left their vehicles overnight at a Hobart facility is completely unsupported by the record.

. And even if the majority were correct in declaring the two provisions inconsistent, general contract principles dictate that the more specific theft provision outlined in Hobart’s manual should qualify the meaning of the more general provision contained on the Rules/Understandings form. See Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc., 971 F.2d 272, 279 (9th Cir.1992) ("It is well settled that ’[w]here there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions.’ " (quoting Restatement of Contracts § 236(c))).